IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-1383

LUCKY DAWGS BREWING COMPANY LIMITED, a Hong Kong limited company,

    Plaintiff,

v.

ZACHARY FRITZ,

    Defendant.

## COMPLAINT

For the reasons alleged below, Lucky Dawgs Brewing Company Limited (Lucky Dawgs) brings this action against Zachary Fritz (Mr. Fritz) for false and disparaging statements he published about the company on or after May 14, 2018, which caused and continue to cause the company to suffer reputational and economic harms.

## PARTIES

1.    Lucky Dawgs is a limited company incorporated under Chapter 622 of the Laws of Hong Kong.

2.    Lucky Dawgs' commercial website is www.luckydawgsbrewing.com.

3.    Mr. Fritz resides in Denver County, Colorado.

## JURISDICTION, AND VENUE

4. This court has original jurisdiction under 28 U.S.C. § 1332, because

   i. the Plaintiff company is registered in Hong Kong,

   ii. the Defendant is a citizen of the state of Colorado, and

   iii. the amount in controversy in this matter exceeds $75,000.00, exclusive of costs and interest as more specifically pleaded *infra*.

5. Venue in this Court is proper under 28 U.S.C. § 1391(b)(1) because the Defendant resides in the Federal District of Colorado.

## GENERAL ALLEGATIONS

6. An individual named Will Garner was a Lucky Dawgs agent before May 14, 2018, and continues to be one of the company's agents.

7. On May 14, 2018, Mr. Fritz paid the domain name registrar Dynadot to register the domain name www.willgarnerthief.com (Website).

8. The Website is no longer live.

9. On or after May 14, 2018, Mr. Fritz published content on the Website.

10. A copy of the Website, as it appeared on June 20, 2018, can be viewed online at the Internet Archive website at the following address:

    https://web.archive.org/web/20180620213846/http://www.willgarnerthief.com.

11. The Website's "Home" page, which was viewable at http://www.willgarnerthief.com, published the following statements on or after May 14, 2018:

> Robert Wilson Garner (Will Garner) is a thief and scammer. The owner of Lucky Dawgs Brewing Company in Hong Kong owes hundreds of thousands of dollars to people who have worked for him and has no intention of paying. He is also soliciting investment in Lucky Dawgs and when he gets the money is not registering the shares of the investors. He is likely using some of this Lucky Dawgs investment money for personal use. He has a history of not honoring written and oral agreements.
>
> This website was created to out him so people become aware of his scams and swindles.
>
> If you have been scammed by Will or have any additional information on Will Garner scams please send an email to willgarnerthief@gmail.com.

12. The Website's "Home" page included a photograph of Mr. Garner and the following words: "Will Garner is a Thief."

13. The Website's "About" page, which was viewable at http://www.willgarnerthief.com/about.html, published the following statements on or after May 14, 2018:

> -We are a group of people that have done business with Will Garner and have been scammed or wronged in some way.
>
> -This website was created to warn people about doing business with Will Garner & Lucky Dawgs Brewing.

3

> -We hope that exposing Will Garner publicly will persuade him to conduct himself in a honorable way going forward.
>
> -we created this website to remind Mr. Garner that we are not going away.

14. The homepage included promises that future testimonials would be posted from more than a dozen named individuals.

15. Mr. Fritz's list of "testimonials" created the misleading impression that others agreed with Mr. Fritz's accusations and were able and willing to corroborate them.

16. On the Website, Mr. Fritz falsely accused Lucky Dawgs of the following unlawful, unprofessional, or criminal conduct:

   i. having committed theft;

   ii. having scammed, swindled, or defrauded others;

   iii. intending not to repay its lawful debts;

   iv. engaging in practices that violated consumer protection or securities laws;

   v. misusing business funds for unlawful purposes; and

   vi. not honoring its contractual agreements.

17. Mr. Fritz had no reason to believe the disparaging statements about Lucky Dawgs published via the Website were true when he published them.

18. Mr. Fritz knew the disparaging statements he published about Lucky Dawgs on the Website were false when he published them.

19. After Mr. Fritz created the Website, he sent emails and other electronic messages to people who knew or did business with Lucky Dawgs.

20. The messages and emails informed the individuals about the Website Mr. Fritz created and encouraged them to read and redistribute the Website.

21. Mr. Fritz's course of conduct severely harmed Lucky Dawgs' reputation.

22. Mr. Fritz's course of conduct curtailed Lucky Dawgs' ability to raise capital for existing and future business ventures.

23. As a direct result of Mr. Fritz's conduct, professional golfers who had agreed to display Lucky Dawgs' logo and brand on their golf bags and other items before May 14, 2018, removed the Lucky Dawgs logo and brand from their golf bags and other items and refused to display them during golf tournaments the PGA Tour sponsored.

24. But for those removals, Lucky Dawgs would have profited from the goodwill and marketing exposure resulting from having its logo and brand on the golf bags and other items of professional golfers who golfed for PGA Tour tournaments.

25. Accredited investors who had expressed interest in investing in Lucky Dawgs before May 14, 2018, informed Lucky Dawgs that they had decided not to invest after learning about the Website and its false and disparaging allegations about Lucky Dawgs' commercial operations.

26. As a direct result of Mr. Fritz's conduct, Lucky Dawgs suffered and will likely continue to suffer special damages in the forms of:

    i. loss of goodwill worth more than $1,000,000;

    ii. loss of brand value worth more than $1,000,000;

    iii. lost marketing opportunities worth more than $500,000;

    iv. inability to raise millions of dollars of the capital it needed to execute its business plan that it would have raised before the date this action commenced; and

    v. decreased returns on investment worth more than $1,000,000 for the capital Lucky Dawgs had raised prior to May 14, 2018.

**COUNT ONE – Business Disparagement or Trade Libel**

27. Lucky Dawgs repeats and realleges each allegation contained above and below as though fully set forth herein.

28. Lucky Dawgs hereby brings a business disparagement or trade libel claim against Mr. Fritz for the disparaging statements about Lucky Dawgs' business operations that Mr. Fritz published on and after May 14, 2018.

29. On the Website, Mr. Fritz made a series of false and disparaging statements of fact about Lucky Dawgs' business and moral conduct.

30. The gist of the statements Mr. Fritz made on his Website is that Lucky Dawgs, in the course of its international commercial operations, committed theft; scammed or defrauded third parties; engaged in deceptive business practices or practices that violated

securities or consumer protection laws; misused business funds; defaulted or intended to default on debts; and failed to honor contractual or other business agreements.

31. Accusations that Lucky Dawgs engaged in the kinds of unlawful and unethical activities described in the preceding paragraph are assertions of fact because they are statements that can be proven true or false.

32. The accusations Mr. Fritz published on his Website are false because they are contrary to the true facts.

33. Lucky Dawgs, in the course of its international commercial operations, did not commit theft; scam or defraud others; engage in deceptive business practices or practices that violated securities or consumer protection laws; misuse business funds; default or intend to default on debts; or fail to honor contractual or other business agreements.

34. The accusations Mr. Fritz published through his Website were false when he made them and are false now.

35. The false accusations Mr. Fritz published through the Website disparaged Lucky Dawgs' commercial operations.

36. As evidenced from the actual words Mr. Fritz used, the false accusations Mr. Fritz published disparaged Lucky Dawgs as a business and disparaged its business practices in a way that was intended to and did dissuade others from doing business with or associating with Lucky Dawgs.

37. Mr. Fritz published his false and disparaging allegations online.

38. Mr. Fritz published the allegations to multiple third parties because he published false and disparaging statements publicly, to a broad online audience.

39. Mr. Fritz knew the false and disparaging statements were false before he published them, or at the very least, Mr. Fritz acted with reckless disregard for the truth or falsity of his statements.

40. For example, Mr. Fritz had no direct, first-hand knowledge that Lucky Dawgs had engaged in any unlawful or illegal activity before, or at the time, or since he published his false and disparaging accusations.

41. Mr. Fritz was under no obligation to publish any statements about Lucky Dawgs.

42. Mr. Fritz did not publish his statements in good faith or with good intentions.

43. Rather, Mr. Fritz intended for his statements to harm Lucky Dawgs.

44. Mr. Fritz also intended for his statements about Lucky Dawgs to be republished by third parties.

45. Mr. Fritz's statements about Lucky Dawgs were republished and redistributed by third parties.

46. As a direct and proximate result of Mr. Fritz's publications of the false and libelous statements about Lucky Dawgs, and the reasonably foreseeable republication of those statements, Lucky Dawgs suffered and will continue to suffer actual and special damages.

47. Specifically, Lucky Dawgs' special damages include reduced ability to raise capital for existing and future business ventures, reduced returns on investment, lost marketing values and opportunities, and lost or damaged business relationships.

48. Lucky Dawgs' special damages is presently estimated at no less than $3,000,000.

**COUNT TWO – Colorado Organized Crime Control Act Violation**

49. Lucky Dawgs repeats and realleges each and every allegation contained above and below as though fully set forth herein.

50. Lucky Dawgs hereby brings a Colorado Organized Crime Control Act violation claim under C.R.S. § 18-17-104(4) against Mr. Fritz.

51. Mr. Fritz knowingly conducted or participated in a pattern of racketeering activity that harmed Lucky Dawgs when he, or others acting on his behalf, committed acts in Colorado that:

    i. violated C.R.S. § 18-5.5-102 (cybercrime) on multiple dates; and

    ii. violated C.R.S. § 18-5-113 (criminal impersonation) on multiple dates.

52. Mr. Fritz essentially created a separate entity or organization in order to harm Lucky Dawgs.

53. Mr. Fritz assumed one or more aliases; organized a fictitious "group of investors;" created an online presence, platform, and messaging for the group; and purported to speak on the group's behalf to engage in unlawful activity targeting Lucky Dawgs.

54. On multiple dates since May 14, 2018, Mr. Fritz or others working on his behalf published false and disparaging statements about Lucky Dawgs on the Website.

55. In so doing, Mr. Fritz did not act in his own name, but on behalf of the separate "group of investors" he created.

56. Before publishing the Website, Mr. Fritz registered its domain with Dynadot.

57. When Mr. Fritz registered the Website domain with Dynadot, he agreed not to violate its Service Agreement.

58. Dynadot's Service Agreement states:

> You understand and agree that You will not use Dynadot's website, blog, forums, or profiles for personal attacks, defamation, harassment, spam, offensive content, inappropriately aggressive behavior, and/or illegal activities. Any material You post and/or works You create on Dynadot's website (hereafter referred to as "Content") may not be illegal, obscene, defamatory, threatening, infringing of intellectual property rights, invasive of privacy, injurious, and/or objectionable.

59. Mr. Fritz violated Dynadot's Service Agreement when he published the Website.

60. Mr. Fritz edited the Website at least once after publishing it.

61. Every time Mr. Fritz edited the Website and published a revised version of it, he violated the Dynadot Service Agreement.

62. Every time Mr. Fritz violated the Dynadot Service Agreement, Mr. Fritz utilized Dynadot's computer systems without authorization, or he exceeded the authorization Dynadot had given him.

63. By accessing Dynadot's computer systems without proper authorization more than twice between May 14, 2018, and the date this action was commenced, Mr. Fritz violated Colorado's computer crime statute at least twice between May 14, 2018, and the date this action was commenced.

64. Mr. Fritz also violated the Dynadot Service Agreement by listing the names of third parties on the Website in a way that was designed to mislead or deceive readers.

65. Mr. Fritz was acting on behalf of the "group of investors" he created when he violated the Dynadot Service Agreement.

66. Mr. Fritz also repeatedly violated Facebook's Terms of Service.

67. When Mr. Fritz violated Facebook's Terms of Service, he did so on behalf of the "group of investors" he formed.

68. Between May 14, 2018, and the date this action was commenced, Mr. Fritz used Facebook's computer systems to send messages to third parties containing disparaging, false, and misleading statements similar to the statements he published on the Website.

69. Between May 14, 2018, and the date this action was commenced, Mr. Fritz used Facebook's computer systems to send messages to third parties informing them about the Website.

70. Facebook's Terms of Service provisions state:

> You may not use our Products to do or share anything:

> That violates these Terms, our Community Standards, and other terms and policies that apply to your use of Facebook.
>
> That is unlawful, misleading, discriminatory or fraudulent.
>
> That infringes or violates someone else's rights.

71. Every time Mr. Fritz sent a third party a message using Facebook's messaging system that referenced or contained a hyperlink to the Website, and every time he sent statements via Facebook's computer systems that were similar to the statements published on the Website, Mr. Fritz violated Facebook's Terms of Service.

72. Mr. Fritz also violated the terms of service of another company.

73. The company Oath acquired Yahoo! in 2017 and its terms of service apply to individuals who use yahoo.com email accounts.

74. Oath's terms of service state:

> You agree not to use the Services to:
>
> i. obtain or attempt to obtain unauthorized access to the Services or to Oath's servers, systems, network, or data;
>
> ii. make available any content that is harmful to children, threatening, abusive, harassing, tortious, defamatory, vulgar, obscene, libelous, invasive of another's privacy, hateful, or racially, ethnically, or otherwise objectionable;
>
> iii. violate any applicable laws or regulations;
>
> iv. impersonate any person or entity; or forge or manipulate headers or identifiers to disguise the origin of any content transmitted through the Service;

    v.    make available any content that you do not have the right to make available or that infringes any patent, trademark, trade secret, copyright or other proprietary rights of any person or entity;

    vi.    post content containing advertisements or other commercial solicitations without our prior written permission;

    vii.    make available viruses or any other computer code, files, programs or content designed to interrupt, destroy or limit the functionality of the Services or affect other users; or

    viii.    interfere with or disrupt the Services or servers, systems or networks connected to the Services in any way.

75. Mr. Fritz, or someone acting on his behalf, used the name Melissa Holmes and the email address melissatholmes2018@yahoo.com.

76. Using the name Melissa Holmes and the yahoo.com email address, Mr. Fritz, or someone acting on his behalf, sent at least one third party an email that referenced or contained a hyperlink to the Website.

77. Every time Mr. Fritz or the person acting on his behalf engaged in the acts described in the preceding paragraph, Mr. Fritz or the person acting on his behalf violated Oath's Terms of Service.

78. When he or they violated Oath's Terms of Service, he or they did so on behalf of the "group of investors" Mr. Fritz formed.

79. Each violation was an unauthorized use of Oath's computer systems that Colorado's computer crime statute prohibited.

80. Each time Mr. Fritz or the person acting on his behalf used Melissa Holmes's identity to send an email that referenced or contained a hyperlink to the Website, Mr. Fritz violated Colorado's criminal impersonation law.

81. As a direct and proximate result of Mr. Fritz's violation of C.R.S. § 18-17-104(4), Lucky Dawgs suffered and will suffer actual and special damages.

82. Specifically, Lucky Dawgs' special damages include the reduced ability to raise capital for existing and future business ventures, reduced returns on investment, lost marketing values and opportunities, and lost or damaged business relationships.

83. Lucky Dawgs' special damages are presently estimated at no less than $3,000,000.

WHEREFORE, Lucky Dawgs prays for the following relief:

   a. a court order requiring Mr. Fritz to pay Lucky Dawgs for all damages and losses it sustained and likely will sustain as a direct result of his unlawful conduct;

   b. a court order requiring Mr. Fritz to pay Lucky Dawgs an amount equal to its actual and special damages, treble damages, reasonable attorneys' fees, and the costs of this action; and

   c. a court order requiring Mr. Fritz to pay all prejudgment and post-judgment interest the law authorizes.

Lucky Dawgs requests a trial by jury.

Dated May 14, 2020

*s/ Edward C. Hopkins Jr.*
Edward C. Hopkins Jr.
*s/ Alexandra Tracy-Ramirez*
Alexandra Tracy-Ramirez
HopkinsWay PLLC
7900 E. Union Ave., Ste. 1100
Denver, CO 80237
(720) 262-5545 tel (720) 262-5546 fax
Email: ehopkins@hopkinsway.com
Email: atracyramirez@hopkinsway.com
*Attorneys for Lucky Dawgs Brewing Company Limited*